IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony Higson,                    )<br>                                                    )  Cr. No. 2:16-780<br>                    Movant,          )<br>                                                    )<br>    vs.                                          )<br>                                                    )  **ORDER AND OPINION**<br>United States of America,         )<br>                                                    )<br>                    Respondent.  )<br>_____)| |

Movant Anthony Higson is an inmate of the Federal Bureau of Prisons who currently is housed at FCC Coleman-Low in Coleman, Florida. Movant, proceeding pro se, brings this action pursuant to 28 U.S.C. § 2255.

FACTS AND PROCEDURAL HISTORY

According to the presentence report (PSR), a confidential informant advised the Drug Enforcement Administration (DEA) in May 2016 that Kevin Gross supplied multi-kilogram quantities of high quality methamphetamine in Berkeley, Dorchester, and Charleston Counties, South Carolina. Other sources were interviewed regarding their transactions with Gross and his sources of supply. It was determined that sources of supply included Movant; Alan Harrison Post, Jr.; Carlos Ruiz Ordonez; Christina Cricks Dearing; Jason Robert Howell; and Richard Droze. Sean McInnis Powell, Cameron Burns, Nicholas Bumpus, and Randy Villareal were identified as couriers. Gross's girlfriend, Christine Thornley, was involved in methamphetamine trafficking. Earl Boger was identified as a customer of Gross and closely associated with Droze. Jessica Prince Villar was identified as Movant's bookkeeper.

On September 15, 2016, while DEA was pursuing its investigation, the Summerville, South Carolina, police department responded to information that drug paraphernalia was found in a motel

room rented in Movant's name. It further was reported that there appeared to be a connection between the individuals in Movant's motel room and another room in the motel. The police knocked on the door of the other room. The door was opened by Gross, who consented to a search of the room. The police located a container of methamphetamine and a cell phone showing text messages telling customers to come to Gross's room to purchase the product. Villar entered the room while the police were present and subsequently was detained and interviewed. She stated that she had been hired by Movant at $500.00 per week to act as bookkeeper for his drug operation. Villar stated she was with Movant when he delivered 10 ounces of methamphetamine to Gross and that Gross owed Movant money.

Prior to her entering the motel, Villar had been observed exiting a vehicle driven by another individual. Police officers followed the vehicle as it left the motel parking lot, and subsequently conducted a traffic stop. Movant was the sole occupant of the vehicle. A search of the vehicle turned up drugs, cash, a drug ledger, and a notebook reflecting sums owed by Gross to Movant. Movant was arrested and charged on the state level with possession with intent to distribute crystal methamphetamine and felon in possession of a firearm. Later the tow truck driver who removed the vehicle Movant had been driving reported he had found a Smith & Wesson .40 caliber handgun in a backpack in the trunk of the vehicle. According to a cooperating witness, Movant and Villar had been preparing to travel to Atlanta, Georgia, to pick up two kilograms of methamphetamine from one of Movant's sources of supply.

Movant was arrested at his residence by federal authorities on October 25, 2016. Law enforcement seized a sawed-off shotgun and three cell phones. Movant provided information respecting his drug activities to law enforcement, including admitting he and Gross had made two

prior trips to Atlanta to pick up a kilogram of methamphetamine each trip. Movant further admitted that he began purchasing kilograms of methamphetamine from Ordonez and selling them to Gross. Movant further cooperated with the authorities by facilitating the sale of methamphetamine with another individual.

On October 12, 2016, an indictment was issued that charged Gross, Powell, Burns, Post, Movant, and Villar with conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 846 (Count 1). The indictment also charged Powell and Burns with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectible amount of methamphetamine (Count 2); Gross with possession with intent to distribute 5 grams or more of methamphetamine and 50 grams or more of a mixture and substance containing a detectible amount of methamphetamine (Count 3); and Gross with being a felon in possession of a firearm and ammunition (Count 4). Movant was arrested on October 25, 2016. Movant waived a detention hearing on October 26, 2016 before the Magistrate Judge. Movant moved for bond on November 8, 2016. On November 9, 2016, a superseding indictment was issued that added Ordonez to the conspiracy count. On November 14, 2016, the Magistrate Judge granted Movant's motion for bond and set a $50,000.00 secured bond. On November 28, 2016, the Magistrate Judge approved a $10,000.00 secured bond and issued an order setting conditions of release. On February 14, 2017, a second superseding indictment was issued that added Dearing, Howell, Thornley, McQueary, Bumpus, Droze, and Boger as defendants to the conspiracy count.[1]

---

[1] Randy Villareal has not been indicted.

On September 26, 2017, Movant pleaded guilty pursuant to a plea agreement to Count 1 of the second superseding indictment. The plea agreement provided a cooperation provision wherein the government agreed that, if Movant cooperated under the plea agreement and the cooperation was deemed to be substantial, the government would move for a reduction of sentence pursuant to U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Fed. R. Crim. P. 35(b).

On October 19, 2017, the United States Probation Office (USPO) filed a petition to revoke bond because Movant had tested positive for use of amphetamine and methamphetamine on April 15, 2017 and October 11, 2017; and for use of methamphetamine on June 9, 2017. Movant was arrested on October 26, 2017. Movant's bond was revoked and Movant was ordered detained pending final disposition of the case.

A presentence investigation report (PSR) was prepared that attributed to Movant six kilograms of methamphetamine, for a base offense level of 34. Movant received a two-level increase for possessing a dangerous weapon, see U.S.S.G. § 2D1.1(b)(1), based on the handgun found in the trunk of the towed car. Movant also received a three-level increase for being a manager or supervisor of a criminal activity involving five or more participants, see U.S.S.G. 3B1.1(b), based on his employment of Villar as a bookkeeper. Movant's adjusted offense level became 39. Because Movant had continued his drug activities while out on bond, he was denied a reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1. Movant's criminal history category was I, which yielded a guidelines sentence of 262 to 327 months imprisonment. Movant's statutory sentence was ten years to life pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Movant submitted the following objections to the PSR:

1.  The defendant objects to Paragraphs 19 and 42, as to the designation of the

>       defendant being a manager or a supervisor and the application of an Aggravating Role, pursuant to USSG §3B1.1(b). Without denying guilt in the underlying offense, the defendant does not believe he would be classified as a manager.
>
> 2.    The defendant objects to Paragraph 40 as it relates to the firearm enhancement pursuant to USSG §2D1.1(b)(1). The defendant asserts that the firearm was not in connection with the drug trafficking as it was in a backpack in the trunk of the vehicle.
>
> 3.    The defendant objects to Paragraphs 21 and 46 contending he has demonstrated acceptance of responsibility and should be afforded the 3-level reduction, pursuant to USSG §3E1.1.

ECF No. 731-1.

Movant appeared before the court for sentencing on May 31, 2018. Movant denied hiring Villar and stated he had only seen her once in his life. Movant denied the existence of a drug ledger. He also stated that the car that had been impounded after his arrest had been rented by Villar and the weapon found in the trunk belonged to her. Thus, Movant contended he should not receive an enhancement for being a manager or supervisor. Transcript of Sentencing Hearing, ECF No. 830, 5-6. Movant further contested not being granted a reduction for acceptance of responsibility. Id. at 6.

The government noted that Movant had not previously denied the fact that he employed Villar as a bookkeeper, and the government was not prepared to call Villar as a witness at that time. The government further asserted that Movant was not being truthful regarding Villar, such that it would not be making a motion for a downward departure on Movant's behalf since he was taking this position. Id. at 7. Movant informed the court he was not trying to plead his innocence, but could not verify the accuracy of the facts set out in the PSR because he only had met Villar a few times, and had never paid her any money. Id. at 11. Movant then withdrew his objection to losing

the acceptance of responsibility reduction. The court overruled the remaining objections. Id. at 12. However, the court continued the sentencing proceeding to allow counsel and Movant additional time to conference so that Movant had a clear understanding of what had transpired and what was contained in the PSR.

Movant again appeared for his sentencing proceeding on June 7, 2018. Movant stated that he withdrew his objection regarding his supervisor or manager status as well as his objection to the loss of acceptance of responsibility points. The court reiterated that it had overruled the objection regarding the firearm. The government then informed the court the reasons it had been considering the downward departure based on Movant's cooperation, and stated that it considered a variance by the court to be acceptable. After hearing from Movant, the court varied two levels and sentenced Movant to incarceration for a period of 210 months, to be followed by a term of supervised release for five years. ECF No. 798. Judgment was entered on June 8, 2018.

Movant filed a notice of appeal on June 18, 2018. The Court of Appeals for the Fourth Circuit dismissed the appeal on May 23, 2019, on the grounds that Movant had waived his right to appeal in the plea agreement. In the meantime, Movant filed the within § 2255 motion on April 15, 2019. Movant raises the following issues:

> GROUND ONE: Ineffective assistance of counsel for failing to investigate the case before advising Movant to accept the plea offer.
>
> GROUND TWO: Counsel was ineffective when advising Higson of his available plea options.
>
> GROUND THREE: Counsel was ineffective for failing to suppress evidence.
>
> GROUND FOUR: Counsel was ineffective for failing to make objections to Higson's [Presentence Investigation Report (PSR)].

> GROUND FIVE: Prosecutorial misconduct in violation of Higson's Sixth Amendment Rights.
>
> GROUND SIX: Conviction obtained by plea of guilty, which was unlawfully induced or not made voluntarily or with understanding of the nature of the charges and the consequences of the plea.

See generally ECF No. 879.

The government filed a motion to dismiss or, in the alternative, to grant summary judgment on March 31, 2020. By order filed March 31, 2020, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Movant was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately. Movant filed a response in opposition to the government's motion on April 20, 2020.

## DISCUSSION

To prove ineffective assistance of counsel, Movant must show that counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Movant also must demonstrate that he was prejudiced by counsel's allegedly deficient performance, in that because of counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694.

In the context of guilty pleas, the prejudice requirement focuses on whether counsel's deficient performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 58 (1985). To satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Id.

A.     Ground One

Movant contends that his plea was not knowing and voluntary because counsel did not conduct an investigation into the material facts of the case. Movant states that counsel was unfamiliar with the relevant facts and therefore unable to offer an informed professional assessment of the case and possible defenses. Movant argues that, had he been advised that the evidence stipulated to in the plea agreement was falsified,[2] triggered a higher mandatory minimum sentence, and would later be used to calculate his guidelines sentence, he would have rejected the plea agreement as it was presented, and pursued other available legal options.

To support an ineffective assistance claim based on the failure to investigate, Movant must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson 93 F.3d 1186, 1195 (4th Cir. 1996). Movant has not met this threshold to show deficient performance. Moreover, the evidence relied on was garnered from a cooperating witness (two kilograms of methamphetamine), whom Movant does not challenge, and from Movant's own admissions (four kilograms of methamphetamine). Even if counsel's performance was ineffective, Movant fails to show resulting prejudice. Movant's Ground One is

---

[2]The plea agreement itself contains no stipulation of facts. The court presumes that Movant refers to the summary presented to the court during the change of plea hearing.

without merit.

B.     Ground Two

Movant contends counsel was ineffective in failing to advise Movant during plea negotiations. According to Movant, counsel advised Movant that his two options were (1) to accept the plea agreement as offered; or (2) proceed to trial, lose, and receive a greater sentence. Movant states that counsel never informed him that he could test the government's case through pretrial motions, plead guilty without a plea agreement, or obtain a PSR prior to plea negotiations to ascertain the guidelines sentence applicable to his case. Movant further states that he would have reserved his right to appeal had he not relied on counsel's advice. Movant's averments at the change of plea hearing do not support his arguments.

Movant stated, under oath, that he was satisfied with the manner in which his lawyer had advised and represented him; talked to his lawyer for as often and for as long as necessary; needed no additional time to meet with his lawyer; and understood his conversations with his lawyer. Transcript of the Plea Hearing, ECF No. 829, 11. Movant indicated he understood counsel could only give an estimate of the guidelines range, and that the court could impose a sentence different from any estimate counsel could have given him; and that the court would not be able to determine the guidelines range until it received a PSR. Movant indicated he understood that his sentence could be affected by relevant conduct. Id. at 11-12.

Movant attested that he had reviewed the indictment with counsel and understood the charges against him. Id. The court also recounted the indictment in open court and explained the elements the government would need to prove beyond a reasonable doubt in order to prevail at trial, as well as the possible penalties. Id. at 19-20. Movant indicated that he understood what the government

9

would have to prove and the possible penalties he faced. Id. at 20. The government placed the details of the plea agreement on the record. Id. at 21-25. Movant attested that he understood the terms of the plea agreement. Id. at 25. The court continued:[3]

> THE COURT: Do you understand you have the right to plead not guilty?
>
> DEFENDANT HIGSON: Yes, ma'am.
>
> THE COURT: Okay. And you understand that when you plead guilty, you admit to the truth of the charge that has been made against you?
>
> DEFENDANT HIGSON: Yes, ma'am.
>
> THE COURT: You might have a defense to the charge. I don't know whether you do or not, but do you understand that if you plead guilty, you waive or give up any defense to the charge?
>
> DEFENDANT HIGSON: Yes, ma'am.
>
> THE COURT: You may have given an incriminating statement in this case. If you plead guilty, do you understand that you waive or give up the right to contest or challenge whether the statement was made freely and voluntarily and in accordance with your constitutional rights?
>
> DEFENDANT HIGSON: Yes, ma'am.
>
> THE COURT: Other than this plea agreement, has anyone promised you anything or held out any hope of reward to get you to plead guilty?
>
> DEFENDANT HIGSON: No, ma'am.
>
> THE COURT: Has anyone threatened you or used force to get you to plead guilty?
>
> DEFENDANT HIGSON: No, ma'am.
>
> THE COURT: Has anyone used any pressure or intimidation to cause you to plead guilty?

---

[3] Movant entered his plea at the same time as a co-defendant. The court has edited out from its discussion the statements made by the co-defendant during the plea colloquy.

DEFENDANT HIGSON: No, ma'am.

THE COURT: Do you feel that you've had enough time to make up your mind as to whether or not you want to plead guilty?

DEFENDANT HIGSON: Yes, ma'am.

THE COURT: Okay. And are you pleading guilty of your own free will [and accord] because you are guilty?

DEFENDANT HIGSON: I am.

The government summarized the facts of the case as follows:

With regard to Mr. Higson, again he was a part of that same conspiracy and involved the same investigation. He, in fact, was intercepted on Mr. Gross's phone on a number of pertinent calls, one of which he –

. . . .

And again, that was the Title III I mentioned that the DEA obtained through the course of the investigation. Mr. Higson was intercepted on a number of pertinent calls. In one of them, the two of them, Mr. Higson and Mr. Gross, discussed selling 4 ounces of ice.

In September of 2016, the agents were actually looking more at Gross than anything else, and Mr. Gross was arrested at the County Inns and Suite in Summerville – Suites in Summerville, South Carolina. They actually went there because there was a call from employees who had found drug paraphernalia in one of the rooms, which was Room 124. That room was rented by Mr. Higson's – or in his name. And they also – the staff of that hotel also told the officers or agents that the people who rented Room 124 were connected to people in Room 209.

The officers then went to Room 209. When they knocked on the door, Mr. Gross – who I mentioned before was the subject of the wiretap – answered the [door], and the officers smelled a strong chemical smell. He gave consent to search, and when they searched the place – which again, this is after Mr. Gross let them in – the officers found a Tupperware container that had 180 grams of ice. Mr. Gross allowed the officers to look[] in his cell phone, and the officers found text messages telling customers to come to that room, which was 209, to buy ice. When they were inside that room, a female co-defendant knocked and walked in the room. Then she walked out as soon as she saw the officers. She was detained. They saw which vehicle she had come out of before going to his room. They went to that vehicle and did a traffic

11

stop on it. In it was Mr. Higson. He was the driver at that time and the sole occupant. When they searched the vehicle, they found 3.4 grams of ice and over $2,000 in cash. They also found a notebook which was a drug ledger, and it showed extensive drug dealing.

They also got a call from a tow truck driver who said that he found a Smith & Wesson handgun in a backpack in the trunk of the vehicle after the vehicle was towed.

Investigators also interviewed a cooperating individual who stated that they'd seen Mr. Higson deliver over 10 ounces of ice to Gross, and they said that Mr. Gross owed Mr. Higson $10,000 at one point, but was down to $6,200. This statement was corroborated in the ledger that was seized from Mr. Higson's vehicle.

    . . . .

THE COURT: And, Mr. Higson, do you agree with those facts?

DEFENDANT HIGSON: That case was dismissed.

THE COURT: Which case is that?

DEFENDANT HIGSON: The one that they're talking about where I was -- they said something about 3.4 grams of ice. It wasn't mine, and it was found in the purse of a girl that had got out of the car. The case was dismissed.

THE COURT: All right. So the 3.4 ounces, you're claiming –

DEFENDANT HIGSON: 3.4 grams.

THE COURT: Grams, I'm sorry. I have "grams" here. Was found in the purse of another individual who claimed ownership.

DEFENDANT HIGSON: The girl that got out of the car and went to the other guy's room.

THE COURT: Okay. So you dispute this amount?

DEFENDANT HIGSON: The case was dismissed. It wasn't – it wasn't mine.

THE COURT: All right. All right. But there's no dispute that he possessed with intent to distribute 50 grams or more; is there? 50 grams or more of methamphetamine and 500 grams or more of a mixture can be attributed to Mr.

   Higson; is that correct?

   MR. KITTRELL: 500 grams or more of a mixture, that's correct.

   THE COURT: All right. Do you agree with that, Mr. Higson?

   DEFENDANT HIGSON: Yes, ma'am.

ECF No. 829, 27-34.

   A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citing cases). "Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id.

   Movant seeks to contradict the statement he made before the court at the plea colloquy. The court finds that counsel's performance fell within the wide range of professionally competent assistance demanded by the Sixth Amendment. Movant's Ground Two is without merit.

C. Ground Three

   Movant contends counsel was ineffective for failing to suppress evidence. Specifically, Movant asserts that Villar made false statements to law enforcement on September 15, 2016. Movant states that he was exposed to a higher mandatory minimum sentence at a higher base offense level because of counsel's failure to suppress the results of Villar's interview.[4]

---

[4] Movant's statutory minimum sentence did not change because of Villar's statements; however, his offense level was enhanced for being a manager or supervisor because of her report that Movant had employed her as his bookkeeper.

> "[W]here an ineffectiveness claim is based on counsel's failure to file a motion to suppress[,] . . . it is enough to call into question counsel's performance that an unfiled motion would have had 'some substance.' Tice [v. Johnson, 647 F.3d 87, 104 (4th Cir. 2011)]. And the prejudice prong in such cases has two distinct components, with the petitioner required to show both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial."

Grueninger v. Director, 813 F.3d 517, 524-25 (4th Cir. 2016) (citing cases).

Assuming for purposes of summary judgment that a motion to suppress would have had "some substance," the court cannot find that Movant was prejudiced by counsel's alleged deficient performance. As noted previously, the government informed the court that it was withdrawing a motion for downward departure because Movant was not being truthful about Villar. After the sentencing proceeding was continued, Movant withdrew his objection, and the government agreed a variance would be acceptable. The choice to withdraw his objection netted Movant a 22-month reduction in his sentence. The government also asserts that, even had counsel tested the government's case, Movant would not have been offered a more favorable plea agreement. In the court's view, Movant has not met his burden of proving that a motion to suppress would have been granted on its merits, or a reasonable probability that granting the motion would have affected the outcome of his case. Movant's Ground Three is without merit.

D.      Ground Four

Movant argues that counsel was ineffective for failing to make objections to the PSR. Movant states that counsel failed to object to the drug quantity attributed to Movant in the PSR. Movant asserts that most of the drugs attributed to him were obtained from statements by Villar to law enforcement, and that no evidence exists to confirm the truthfulness of Villar's statements. According to Movant, had counsel fully investigated the case, counsel would have objected to drug

quantities, the gun enhancement, and the managerial role enhancement based on Villar's allegedly false statements regarding her employment by Movant.

The court reiterates that 4,000 kilograms of methamphetamine attributed to Movant were based on his own admissions to law enforcement. Movant has not offered a substantive argument regarding the additional 2,000 kilograms reported by a confidential witness. The court further reiterates that counsel objected to the designation of manager or supervisor and the firearm enhancement in the PSR, but the objections were withdrawn with Movant's consent at the sentencing proceedings. Movant's Ground Four is without merit.

E.     Ground Five

Movant claims prosecutorial misconduct in violation of his Sixth Amendment rights. Movant argues that the government failed to investigate the facts of the case, therefore allowing into evidence a false statement by Villar. Movant states that he brought up the false evidence in open court but was punished by the government withdrawing its motion to reduce Movant's sentence.

Claims of prosecutorial misconduct must be raised on direct appeal; otherwise the argument is procedurally defaulted. Jones v. United States, Civil Action No. DKC 17-0835, Criminal No DKC 14-0176, 2018 WL 1069438, *4 (D. Md. Feb. 27, 2018) (citing Pruett v. Thompson, 996 F.2d 1560, 1565 (4th Cir. 1993)). Even if Movant had raised prosecutorial misconduct on direct review, he cannot prevail. The test for reversible prosecutorial misconduct is comprised of two components: (1) that the prosecutor's conduct was improper, and (2) that such misconduct so prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. United States v. Mitchell, 1 F.3d 235, 241 (4th Cir. 1993) (quoting United States v. Brockington, 849 F.2d 872, 875 (4th Cir. 1988), overruled on other grounds by Bailey v. United States, 516 U.S. 137 (1995)).

15

The court finds no support in the record for a finding that the government improperly relied on Villar's statements. The facts supporting her contention that she was Movant's bookkeeper include her knowledge of the drug ledger that was found in the vehicle in which Movant and Villar were traveling on September 15, 2016 and her knowledge that Gross owed Movant money. Movant's Ground Four is without merit.

F.   Ground Five

Movant states that his unawareness of the working of the judicial system, combined with counsel's allegedly defective performance, made it impossible to understand what he was pleading to and the consequences of the plea. According to Movant, had he realized the full impact of his plea and what exactly he was pleading to, he would have refused the plea agreement.

Movant's Ground Five essentially reasserts the arguments advanced in Grounds One through Four. For the reasons set out hereinabove, the court concludes that Movant's Ground Five is without merit.

## CONCLUSION

The government's motion for summary judgment (ECF No. 914) is **granted**. Movant's § 2255 motion (ECF No. 879) is **denied and dismissed**, with prejudice. Movant also filed a motion to appoint counsel on March 11, 2020 (ECF No. 913). Movant's motion is **denied**.

### IV.   CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise

debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001). The court concludes that Movant has not made the requisite showing. Accordingly, the court **denies** a certificate of appealability.

    **IT IS SO ORDERED.**

                                          /s/ Margaret B. Seymour
                                          Senior United States District Judge

Columbia, South Carolina

February 8, 2021